IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-00683-DDD-STV

CANYON CLUB CONDOMINIUM OWNERS
ASSOCIATION,

        Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, a corporation,

        Defendant.

---

**AMERICAN FAMILY'S MOTION FOR PARTIAL SUMMARY JUDGMENT:
NO COVERAGE FOR VENTED ASSEMBLIES**

---

Defendant ("American Family") moves under Fed. R. Civ. P. 56(a) for partial summary judgment regarding the asserted Vented Assembly costs in Plaintiff's claims for breach of insurance contract, bad faith breach of insurance contract, and unreasonable delay or denial of a covered benefit, and for a ruling that American Family is not liable for any Vented Assembly costs.

## INTRODUCTION

Plaintiff's insurer American Family paid Plaintiff $1.8 million in actual cash value (toward $2.7 million in replacement costs) for hailstorm damage to Plaintiff's roof shingles and certain other building components. Plaintiff now alleges $19.35 million for hail repair costs.[1] A

---

[1] American Family's independent cost construction expert has opined that the entire project can be rebuilt, from the ground up, for $8.2 million. (Ex. 1, Sage Group Report at 9, Aug. 31, 2020.)

large portion of that figure is for costs associated with the installation of new ventilation structures to improve the buildings' ventilation.

The insurance policy ("Policy") covers "direct physical loss . . . or damage . . . caused by or resulting from" hail. Plaintiff's proposed new ventilation structures were not present during the hailstorm. Therefore, they did not experience direct physical loss or damage from the hailstorm, and the Policy does not cover them.

Also, the buildings' pre-hailstorm ventilation was admittedly inadequate. As a result, rising interior moisture which was not vented to the outside air accumulated on roofing components, thereby damaging them. The Policy exclusions include: (i) "hidden or latent defect"; (ii) "the presence or condensation of humidity, moisture or vapor" occurring for at least 14 days; and (iii) "faulty, inadequate or defective" design, construction, and other negligent work. Because the buildings' ventilation was admittedly defective, and because that defect caused the interior moisture to be present long-term, Plaintiff's proposed new ventilation structures are excluded under all three of these Policy exclusions.

Accordingly, the Court should grant partial summary judgment and issue a ruling that the fortuity of the hailstorm does not make American Family liable to upgrade Plaintiff's ventilation.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff is the insured under American Family's April 2016 insurance Policy for a 41-building property at 6495 Happy Canyon Road in Denver, Colorado ("Property"). (Ex. 2, Policy.) The Property, constructed in 1969, contains 175 residential units. (Ex. 1, Sage Group Report at 2, Aug. 31, 2020.)

2. A July 2016 hailstorm ("Hailstorm") damaged certain portions of the Property. (Plaintiff Canyon Club Condominium Owners Association's Answer to Defendant's Supplemental Counterclaims ("Plaintiff's Answer") ¶ 34, ECF No. 89.) Through a public adjuster, Plaintiff reported a Hailstorm insurance claim to American Family. (*Id.*) Plaintiff also retained engineering firm SBSA, Inc. to assist with that claim. (*Id.* ¶ 69.) SBSA issued several reports. (*See infra* ¶¶ 4, 6.)

3. American Family has paid Plaintiff $1.8 million in actual cash value toward $2.7 million in replacement repair costs caused by the Hailstorm. (Ex. 3, Check Copies.) The payments include costs to replace all shingles. Under the Policy, American Family will pay the $900,000 depreciation difference once Plaintiff makes permanent repairs. (*See* Ex. 2, Policy, ¶I.E.5.d(1)(d)(i), at 46.) Except for one building described below, Plaintiff has not made permanent repairs. (Ex. 1, Sage Group Report at 6.)

4. Air inside residential buildings contains occupant-generated water vapor from daily activities such as showering and cooking. Because warm air rises, interior air containing water vapor ("Interior Moisture") rises toward the inside of the roof. (Ex. 4, 2017 SBSA Report at 36, 56-57.) If a roof's interior is not adequately vented to the outside air, then over time accumulated Interior Moisture will condense upon, and thereby damage, roof components such as structural roof wood members, insulation, and ceiling gypsum. (Ex. 5, 2020 SBSA Report at 11.)

5. When Plaintiff's buildings were constructed, they were roofed with wood-shake shingles. In 2012-13, Plaintiff re-roofed all its buildings with asphalt shingles.[2] Asphalt shingles are less permeable than wood-shake shingles. To dissipate Interior Moisture to the outside air, an asphalt-shingled roof requires more ventilation than a wood-shake roof. (Ex. 5, 2020 SBSA Report at 9-11.)

6. SBSA's first report concluded that Plaintiff's buildings had inadequate ventilation, and that accumulated Interior Moisture had damaged roofing components. (Ex. 4, 2017 SBSA Report at 36-37, 55-60.) SBSA's most recent report agreed that "SBSA has acknowledged the presence of moisture in the roof assemblies due to inadequate ventilation." (Ex. 7, SBSA Oct. 19, 2021 Report at 36.)

7. During deposition, Heidi Klein, an engineer who co-signed the last three SBSA reports, was asked whether the pre-Hailstorm ventilation in Plaintiff's buildings was sufficient to prevent the accumulation of Interior Moisture. Klein answered that "the ventilation was not compliant with the [building] code at the time." (Ex. 8, Klein Dep. Tr. 117:24-118:7.)

8. SBSA has recommended improving the buildings' ventilation by installing large structures called vented nailable decks ("Vented Assemblies") atop the roofs. The Vented Assemblies would add weight and height to the roofs. To accommodate the weight, SBSA has recommended adding structural members to the roof framing. Regarding height, to maintain continuous roof planes, SBSA has recommended installing Vented Assemblies even on roof

---

[2] The re-roofing cost $752,000, which Plaintiff paid itself. (Ex. 6, Mountain States Invoice.)

locations that SBSA did not believe needed them for ventilation. (Ex. 4, 2017 SBSA Reportat 63-66.)

  9.  In 2018 Plaintiff filed this lawsuit against American Family. As pertinent here, Plaintiff sued American Family for breach of insurance contract, common law bad faith breach of insurance contract, and statutory bad faith for unreasonable delay or denial of payment of covered benefits under C.R.S. §§ 10-3-1115 and 10-3-1116. (*See*, ECF Nos. 3, 61, 86.) Early in the litigation Plaintiff alleged about $8 million in Hailstorm repair costs for its breach of contract claim. (Plaintiff Answer, ECF No. 89 ¶¶ 86, 91.)

  10.  Between August 2019 and early 2020, Plaintiff reconstructed one of its 41 buildings to repair damages allegedly caused by the Hailstorm ("Project X"), including installing a Vented Assembly. (Id. ¶¶ 4-6, 266, 284.) Plaintiff informed American Family that Plaintiff would use Project X to establish Plaintiff's repair costs for the entire Property. (Joint Motion to Amend Scheduling Order, ECF No. 71 ¶ 9, Dec. 6, 2019.)

  11.  In February 2020, Plaintiff disclosed that the now-completed Project X cost over $500,000.[3] (Motion to Amend Scheduling Order, ECF No. 75, ¶ 19, Mar. 18, 2020.) Extrapolating from Project X, in August 2020 Plaintiff's expert Reconstruction Experts Inc. issued a written report ("2020 RE Report") asserting $19.35 million in alleged Hailstorm repair costs for the entire Property. (Ex. 9, 2020 RE Report at 4.)

---

[3] At that time, the building's market value was $581,400. (Defendant's Counterclaims, ECF No. 87 ¶ 271.)

12. The 2020 RE Report includes costs for Vented Assemblies. Costs relating to Vented Assemblies are a large portion of the $19.35 million.[4] (*See* Ex. 9, 2020 RE Report.) The 2020 RE Report charges American Family for Vented Assembly costs on the basis that those costs allegedly "result[ ] from" the Hailstorm. (*Id.*, 2020 RE Report, p. 4.)

## **STANDARD OF DECISION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit"; and a dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported conclusory allegations . . . do not create a genuine issue of fact." *In re Grandote Country Club*, 252 F.3d 1146, 1149 (10th Cir. 2001).

Colorado substantive law applies in this diversity case. *Leprino Foods v. Factory Mut. Ins. Co.*, 653 F.3d 1121, 1127 (10th Cir. 2011).

---

[4] American Family believes that RE's asserted costs relating to Vented Assemblies are nearly $12 million of the $19.35 million. (*See* Ex. 9, 2020 RE Report, and Ex. 10, Application for Payment.) This estimate accounts for all costs associated with Vented Assemblies, including (without exhaustion): adding more roof trusses to support the Vented Assemblies' weight, and other re-framing work to accommodate the Vented Assemblies; work on certain other building components (e.g., party walls) made possible by and/or purportedly dependent upon the re-framing to install the Vented Assemblies; and proportionate shares of RE's overhead and profit, site supervision, contingencies, etc. for the whole project. Plaintiff may dispute the $12 million estimate; however, *the actual figure is not material to this motion, which only addresses liability*. And, whatever the actual figure is, it is undisputedly a large portion of Plaintiff's alleged contractual damages.

# ARGUMENT

### I. THE POLICY DOES NOT COVER VENTED ASSEMBLIES BECAUSE THE HAILSTORM COULD NOT HAVE CAUSED DIRECT PHYSICAL LOSS OR DAMAGE TO THEM.

Interpretation of a Colorado insurance policy is "a matter of law." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009). A policy "must be given effect according to the plain and ordinary meaning of its terms." *Id*. A dictionary may be used to determine meaning. *Fid. Nat'l Title Ins. v. Woody Creek Ventures, LLC*, 830 F.3d 1209, 1213 (10th Cir. 2016).

A policy may not be interpreted in a way which "essentially rewrites" it and "effectively creates coverage where none previously existed." *Craft v. Phila. Indem. Ins.*, 2015 CO 11, ¶ 45. The insured bears the burden of demonstrating coverage. *Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991).

The Policy provides coverage for "direct physical loss . . . or damage . . . caused by or resulting from" the Hailstorm. (Ex. 2, Policy, Section I.A., p. 31.) The word "direct" in that phrase means "immediate." *See Abady v. Certain Underwriters at Lloyd's*, 317 P.3d 1248, 2012 COA 173, ¶21 ("direct" in phrase "direct financial loss" means "immediate"). Thus, "direct" loss "unambiguously refers only to the immediate loss." *Id*., 2012 COA 173, ¶25. "Immediate" means "acting or being without the intervention of another object, cause, or agency." *Webster's Third New International Dictionary* (2002). Therefore "direct loss" means "[a] loss that results immediately and proximately from an event." *Black's Law Dictionary* (11th ed. 2019).

The word "physical" in the phrase "physical loss . . . or damage" means "a distinct, demonstrable, physical alteration" of the item of property at issue. *Hasan v. AIG Prop. Cas. Co.*,

7

No. 16-cv-02963-RM-MLC, 2018 WL 10335670, at *3, *5 (D. Colo. Aug. 2, 2018), *aff'd* 935 F.3d 1092 (10th Cir. 2019).  "Damage" in the same phrase means "physical harm." *Black's Law Dictionary* (11th ed. 2019). "Loss" means a "financial detriment." *Rankin v. USAA Cas. Ins. Co.*, 271 F. Supp. 3d 1218, 1226-27, 1234 (D. Colo. 2017).

The Policy phrase "caused by or resulting from" "limit[s] the causation inquiry to the facts immediately surrounding the loss." *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 686 (Colo. 1989) (citation omitted). That phrase is distinct from the alternate insurance policy phrase "arising out of," which is a broader concept akin to "but for" causation. Thomas W. Henderson, et al., *Survey of Covid-19 Insurance Issues*, 49 Colo. Law. No. 8 (Aug./Sept. 2020), at 61. Thus "caused by or resulting from" demonstrates "inten[t] to narrow the scope of a coverage grant." *Id*.

Taking the foregoing definitions together, the Policy does not cover components of Plaintiff's buildings for damage caused by the Hailstorm unless: hail directly impacted those components; the direct impacts resulted in physical alteration of the components; and the physical alteration was harmful or detrimental.

When the Hailstorm occurred, Plaintiff's buildings were roofed with the asphalt shingles installed in 2012-13. The shingles were impacted by hail, and the impacts caused harmful physical alteration to them. The Policy thus covers the shingles, and American Family long ago paid Plaintiff to replace them all.

When the Hailstorm occurred, however, there were no Vented Assemblies (or any comparable structures) on Plaintiff's roofs. Plaintiff seeks to install Vented Assemblies now—for the first time—long after the Hailstorm. Because there were no Vented Assemblies on the roofs

when the Hailstorm occurred, hail did not impact Vented Assemblies or cause any harmful physical alteration to them. Therefore, the Hailstorm caused no direct physical loss or damage to Vented Assemblies, and the Policy does not cover them.

As the Policy does not cover Vented Assemblies, summary judgment should be granted against Plaintiff's breach of contract claim to the extent it contends the Policy requires American Family to pay for Vented Assemblies as part of Plaintiff's Hailstorm claim. For the same reason, summary judgment should be granted to the same extent against Plaintiff's bad faith claims. *See MarkWest*, 558 F.3d at 1193 (common law "bad faith claim must fail if … coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage"); *Hall v. Allstate*, No. 19-cv-02604-DDD-NYW, 2021 WL 119344, at *4 (D. Colo. Jan. 12, 2021) (Domenico, J., applying *MarkWest* to claims for covered benefits under §§ 10-3-1115 and 1116), *affirmed* 20 F.4th 1319 (10th Cir. 2021).

## II. THE POLICY EXCLUDES VENTED ASSEMBLIES.

Even if an insured meets its burden of demonstrating coverage under a policy, then coverage is subject to Policy exclusions. *Kane*, 768 P.2d at 685. The insurer has the burden of showing that an exclusion applies. *Rodriguez*, 821 P.2d at 853.

The Policy contains these exclusions (among others):

1. "hidden or latent defect" (Ex. 2, Policy, ¶I.B.2.l.(2) at 43);

2. "the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more" (Ex. 2, Policy, ¶I.B.2.p., at 44); and

3. "Faulty, inadequate or defective: Planning . . . ; Design, specifications, workmanship, repair, construction . . .; Materials used in repair, construction . . . ; or Maintenance." (Ex. 2, Policy, ¶I.B.3.c.(1-4), at 44).

In *Mock v. Allstate Ins. Co.*, 796 F. App'x 546, 549-50 (10th Cir. 2020), the Tenth Circuit relied on policy exclusions for "faulty, inadequate or defective … design … [or] construction" to affirm a grant of summary judgment for a Colorado insurer against a homeowner's claim for long-term water intrusion through gaps in exterior stucco walls. In *Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 691 n.2, 693-94 (10th Cir 2016) (affirming *Gallegos v. Safeco Ins. Co. of Am.*, No. 14-cv-1114-WJM-MJW, 2015 WL 3526956 (D. Colo. June 4, 2015)), the Tenth Circuit applied the same exclusion, as well as an "inherent defect" exclusion, to affirm summary judgment for an insurer which had denied a Colorado homeowner's claim for partial collapse of a roof. And, in *Lodge at Mountain Village Owner Ass'n. v. Eighteen Certain Underwriters at Lloyd's*, No. 20-cv-00380-CMA-SKC, 2022 WL 824435, at *7 (D. Colo. Mar. 18, 2022), the court held that an exclusion which included "latent defect" applied to gradual water intrusion.

*Mock*, *Gallegos*, and *Lodge* apply here. The above quoted Policy exclusions are clear and specific and must be enforced as written. *Gallegos*, 646 F. App'x at 693-94. The pre-Hailstorm inadequacy of the ventilation in Plaintiff's buildings is undisputed. Therefore the Policy excludes ventilation, and American Family is not liable to pay for Vented Assemblies to improve it.

## CONCLUSION

Partial summary judgment should enter for American Family against the asserted Vented Assembly costs in Plaintiff's claims for breach of insurance contract, bad faith breach of insurance contract, and unreasonable delay or denial of a covered benefit, and for a ruling that American Family is not liable for any Vented Assembly costs.

Dated: July 19, 2022

Respectfully submitted,

*s/ Dean Neuwirth*
Terence M. Ridley
Megan B. Treseder
Dean Neuwirth
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: 303.839.3800
Facsimile: 303.839.3838
Email: tridley@spencerfane.com
mtreseder@spencerfane.com
dneuwirth@spencerfane.com

*s/ Habib Nasrullah*
Habib Nasrullah
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
nasrullah@wtotrial.com

Attorneys for Defendant
American Family Mutual Insurance Company

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S TYPE-VOLUME LIMITATIONS

I certify that the foregoing pleading complies with the proportionally spaced serif font requirement (here, Times New Roman) in Judge Domenico's Civil Practice Standard I(D).

I further certify that this motion complies with Judge Domenico's Civil Practice Standard III(A)(2) as modified in this case by his July 13, 2022 Order granting American Family's Motion for Leave to Exceed the Summary Judgment Word Limit, in that this motion contains 2,577 words (including footnotes but excluding caption, signature block, certificate of service below, and this certificate of compliance) and this motion is part of a total of no more than 12,000 words for American Family's collective motions for partial summary judgment.

*s/ Dean Neuwirth*
Dean Neuwirth
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203
Telephone:   303.839.3800
Facsimile:    303.839.3838
Email: dneuwirth@spencerfane.com

Attorney for Defendant
American Family Mutual Insurance Company

## CERTIFICATE OF SERVICE (CM/ECF)

I certify that on July 19, 2022, I electronically filed the foregoing American Family's Motion for Partial Summary Judgment: No Coverage for Vented Assemblies, and cited exhibits, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Christopher N. Mammel**
  cmammel@merlinlawgroup.com, tchensee@merlinlawgroup.com, dreyes@merlinlawgroup.com, asasko@merlinlawgroup.com

- **Michael William Duffy**
  mduffy@merlinlawgroup.com, ileservice@merlinlawgroup.com

- **Habib Nasrullah**
  nasrullah@wtotrial.com, goodwin@wtotrial.com, winiarski@wtotrial.com

- **Terence M. Ridley**
  tridley@spencerfane.com, lnorris@spencerfane.com, sallen@spencerfane.com

- **Megan Bitner Treseder**
  mtreseder@spencerfane.com, kkern@spencerfane.com

- **Dean Neuwirth**
  dneuwirth@spencerfane.com, arutherford@spencerfane.com

*s/ Dean Neuwirth*
Dean Neuwirth
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203
Telephone:   303.839.3800
Facsimile:    303.839.3838
Email: dneuwirth@spencerfane.com

Attorney for Defendant
American Family Mutual Insurance Company