IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-00683-DDD-STV

CANYON CLUB CONDOMINIUM OWNERS
ASSOCIATION,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, a corporation,

      Defendant.

---

**CANYON CLUB'S RESPONSE TO MOTION
TO EXCLUDE EXPERT TESTIMONY OF DEREK O'DRISCOLL PURSUANT TO
FED. R. EVID. 702 AND 403 (ECF 195)**

---

Plaintiff Canyon Club Condominium Owners Association ("Canyon Club"), by its

undersigned counsel of record, submits this Response to American Family Mutual Insurance

Company's ("American Family") Motion to Exclude Expert Testimony of Derek O'Driscoll

Pursuant to Fed. R. Evid. 702 and 403.

### I. Summary of Issues for Response

American Family has accused Mr. O'Driscoll of using his specialized expertise to

commit fraud in violation of the policy, and seeks to impute that fraud to Canyon Club. *See* ECF

87 (*passim*). It tacitly acknowledges that, in fact, Mr. O'Driscoll is an expert in construction,

forensic investigation, policy interpretation, and claim handling. In fact, its pleadings show that

American Family fully intends to argue to the jury that Mr. O'Driscoll is so expert in his work

that he must have intended to make the misrepresentations it alleges[1] – but it does not want him

---

[1] *See id.*, ¶¶ 42-44, 115, 142, 152, 159, 165, 170, 176, 178, 186, 194, 203, 208, 215, 228, 242, 247, 259, 264, 317.

to be acknowledged in court as an "expert," nonretained or otherwise, when it attacks his credibility as the perpetrator of fraud.

In order to investigate the damages resulting from the July 15, 2016 hail storm at Canyon Club's property, it hired Derek O'Driscoll, a Colorado-licensed public adjuster working with Impact Claim Services. Canyon Club's buildings were originally constructed in 1969, and the damages from the storm were not only extensive; structural and habitability issues resulting from the existing condition of the covered buildings as affected by the hail storm had to be resolved consistent with engineering and applicable building code standards. American Family made a superficial evaluation of the extent of the damage and what would be required to restore the buildings consistent with the coverage in its Policy. It made an initial payment based on that investigation shortly after the storm, and admittedly overlooked – and failed to pay for – many elements of the damaged roofing system that had to be repaired.

Mr. O'Driscoll communicated with American Family's representatives frequently to identify the missing elements needed for repairs, but was simply ignored. Instead, American Family refused to supplement its payments and instead demanded that Canyon Club submit a sworn statement in proof of loss within 60 days. Thoroughly investigating the damages to Canyon Club's forty-one covered buildings was impossible to complete in that time frame, and Mr. O'Driscoll notified American Family that he needed more time to involve a structural engineer and a general contractor capable of undertaking a project of the magnitude expected. American Family allowed some additional time, but not enough to enable that level of investigation. O'Driscoll was able to work preliminarily with an engineer and used computer software to prepare an estimate showing the anticipated extent of repairs needed and rough levels of cost, which was submitted on July 7, 2017.

American Family then finally hired its own construction experts – an architect and a general contractor – and over a nearly 5-month time period prepared an evaluation of the July 7 Proof of Loss submission and the general contractor prepared a bid nearly tripling the cost American Family had initially anticipated for repairs. Again, American Family suppressed the likely cost of repairs by prohibiting its general contractor from including necessary costs of repairs such as structural supports, code-required ventilation changes, and replacement of decking for the roof to provide a stable surface to nail the shingles, arguing in spite of its own experts' conclusions that those items should not have to be covered even if required so the structures were inhabitable.

Mr. O'Driscoll's work required substantial construction and insurance expertise, and a tremendous amount of time to perform investigation, research and inspections, on his own and in association with American Family's experts. And as is commonly the case with large insurance losses, Canyon Club had no budget or resources to fund his work on an hourly basis. Colorado law expressly anticipates this situation, and authorizes licensed adjusters to work under contingent fee arrangements, with specified disclosures to clients.

Canyon Club did not hire Mr. O'Driscoll to be an expert witness at a trial – it hired him to investigate and work with American Family to adjust the hail loss claim, and avoid any need for a trial. And a year and a half later when a lawsuit was made necessary by American Family's denials of coverage and underpayments, Canyon Club's legal counsel did not hire Mr. O'Driscoll to provide expert opinions at a trial; but counsel did comply with Fed.R.Civ.P. 26(a)(2)(C), which requires that it disclose testimony of *nonretained* witnesses whose opinions are based on specialized knowledge.

Mr. O'Driscoll is a material percipient witness to literally all the events of the claim – his investigation using his own and others' expertise, preparing a claim submission in accordance with the coverage provided under the insurance policy, and working with American Family and its decision-makers throughout that time. When he is called to testify about the work he performed for Canyon Club, he will explain not only what he did, but *why*, and the scope and costs of the work necessary to repair the damage. And since American Family now claims that his work product, as a professional in this field, *misrepresents* what needs to be done and how much it should cost, he will need to substantiate why he reached the conclusions presented to American Family in order to dispel any inference of intent to defraud, including based on his own experience that many of the very same estimating practices American Family alleges are fraudulent when O'Driscoll followed them in his estimate, are used in identical circumstances *by American Family* itself, or are recommended by the publisher of the estimating software used. *See* ECF 89, ¶¶ 112 – 13, 131- 32, 145 – 48, 156 – 58, 163 – 64, 167 – 68, 172 – 74, 181, 197 – 202, 252 – 54, 258, 261 – 62.

With this backdrop, American Family wants to preclude Mr. O'Driscoll from testifying based on the expertise inherent to his work and his role in the events leading to suit. And it does not want the jury to be informed that he is an "expert," though that characterization is undeniable. It contends that it should be able to impugn his personal and professional integrity by claiming he has orchestrated a massive attempt to defraud, cross-examine him to reveal his potential bias as a result of his contingent fee employment, and still prevent him from explaining the technical bases for the decisions he made and the work product he generated. Undoubtedly, his testimony about these circumstances and his wel-informed explanations of why he reached his conclusions, in context, will be helpful to a jury.

Colorado law generally favors admission of all relevant evidence and does not automatically prohibit admission of relevant opinion testimony by a non-retained witness who is employed under a contingent fee under these circumstances. Instead, Colorado recognizes that the contingent nature of compensation may create bias affecting the reliability of the evidence, which may be evaluated by a jury in light of cross-examination. *See Murray v. Just In Case Bus. Lighthouse, LLC,* 374 P.3d 443, 449-52 (Colo. 2016). Balancing the probative value of the opinion evidence to be offered through Mr. O'Driscoll against any alleged "danger of unfair prejudice" undermines American Family's Motion –American Family will have the opportunity to bring out through cross-examination the alleged bias that could result from his contingent compensation, but at the same time excluding Mr. O'Driscoll's opinions based on his expertise while American Family argues that very expertise is evidence of intent to defraud is inequitable. American Family may not benefit from its "head I win; tails you lose" strategy to suppress evidence.

## II. <u>STANDARDS FOR REVIEW OF THE MOTION</u>

### A. Rule 26(a)(2)(C) Requires a "Brief Account"
### Stating the Main Points of Opinions and Supporting Facts

American Family does not challenge whether Mr. O'Driscoll should have provided a report. Further, American Family does not challenge the sufficiency of the disclosures regarding Mr. O'Driscoll's opinion testimony under Rule 26(a)(2)(C). Instead, it focuses solely on the contention that a contingency fee agreement undermines the reliability of any opinion Mr. O'Driscoll could express.

However, Rule 26(a)(2)(C) requires that Canyon Club's counsel provide a disclosure regarding opinion testimony of a non-retained expert. Mr. O'Driscoll's anticipated opinion testimony, to the extent it relies upon "special expertise," has been disclosed in detail. *See* ECF

5

195-6. Consistent with Mr. O'Driscoll's role in the underlying dispute as a percipient witness, his opinions are based on his real-time observations in the events rather than study of the record or hypotheticals.

### B. Standards Under Rule 702

Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589-92, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Truck Insurance Exchange v. MagneTek, Inc*., 360 F.3d 1206, 1210 (10th Cir. 2004). American Family does not challenge Mr. O'Driscoll's testimony as being relevant, or the qualifications of Mr. O'Driscoll. The attack is solely based on "reliability" of his opinions since he was hired in 2016 under a contingent fee agreement.

### III. THE CONTINGENCY FEE EMPLOYMENT AGREEMENT IS NOT DISQUALIFYING

American Family does not supply for the record the employment agreement between Canyon Club and Impact, Mr. O'Driscoll's employer. That Agreement is attached here as Ex. A. Impact was retained October 18, 2016, shortly after the loss was reported by Canyon Club to provide its **expertise and services** to assist in the presentation of the Claim and to recover payment and to settle the Claim for the fair and reasonable value of the damages and losses. Ex. A at p. 1, ¶ 1 (Emphasis added).  The fee for Impact's services is "a percentage of 10% from all funds paid by the Insurance Company. *Id*. When Impact was hired, there was no litigation with American Family. Impact was not hired to provide expert testimony in a lawsuit; it was hired to investigate, value and adjust the hail damage claim.

Under the law of Colorado, licensed public adjusters must have and use for the benefit of the insured sufficient expertise to adjust the claim. Colo.Rev.Stat. § 10-2-417 (emphasis added).

6

Public Adjusting entities are authorized to charge contingent fees, with appropriate disclosures. *Id.*; Colorado Division of Insurance Regulation l -2-19, § 5; *see also* Ex. A at p. 7 of 8.

Now that litigation has become necessary to obtain the benefits owed Canyon Club under the insurance policy, Mr. O'Driscoll will testify about the services he provided in the course of his work before litigation. And given his expertise and scope of work performed, he will explain certain opinions reached in order to perform his professional obligations. While he is a lay witness in many regards, he is also a nonretained expert witness whose opinions were formed in the course of performing the services to adjust the loss and claim. Although the boundary between lay "expertise" and "special expertise" is blurry, some of Mr. O'Driscoll's opinions may be admissible under Fed.R.Evid. 701 as a lay witness with expertise, and others as a percipient witness with special expertise who may offer opinions under Fed.R.Evid. 702, with disclosures pursuant to Rule 26(a)(2)(C).[2] In part, offering opinions based on specialized knowledge is necessary to refute the allegations of American Family that Mr. O'Driscoll used his specialized knowledge to commit fraud allegedly imputable to Canyon Club.

In *Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, Civil Action No. 17-cv-01773-MSK-MEH, 2022 WL 2198262 (D. Colo. Feb. 8, 2022), the court evaluated similar circumstances and held that Rule 403 should be applied to balance the interests of the court and

---

[2] Even in light of the amendments to Fed.R.Evid. 701 in 2000, there is no clear boundary between the types of opinions a lay witness involved in the underlying events of a case may offer consistent with Fed.R.Evid. 701 as opposed to when opinions are to be scrutinized under the standards of Fed.R.Evid. 702, and thus must be disclosed pursuant to Rule 26(a)(2)(C). *See, e.g., Asplundh Mfg. Div. v. Benton Harbor Engineering*, 57 F.3d 1190, 1194-1207 (3d Cir. 1995)(Lay opinion testimony must be based on witness' personal firsthand perception, while expert may opine in response to hypothetical questions); *Donlon v. Phillips Lighting North Amer. Corp.*, 581 F.3d 73, 80-84 (3d Cir. 2009)(A lay witness with particularized knowledge by virtue of experience may testify, even if the subject matter is specialized or technical, because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702); *Teen–Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) (company's licensed public accountant was allowed to testify as lay witness regarding lost profits based on his personal knowledge of company's balance sheets).

the parties. After surveying the divergent approaches taken by federal courts considering Under

Rule 702 the question of whether an expert who is compensated under a contingent fee

arrangement should be allowed to testify, the court noted that the Tenth Circuit has not directly

addressed the issue. *Hiland Hills*, *supra* at *22. However, Senior Judge Krieger recognized that

the Colorado Supreme Court considered a closely related issue in *Murray v. Just in Case

Business Lighthouse, LLC,* 374 P.3d 443, 2016 CO 47 (Colo. 2016) and declined to establish a

*per se* rule excluding testimony.[3]

In *Murray*, the Court considered a similar issue involving a consultant initially retained to

assist with ongoing litigation by reviewing business records and collecting data. The defendant's

agreement with the consultant called for him to be paid "a ten percent interest in the case," thus

tying his compensation directly to the amount that the defendant might recover on its

counterclaims. Later, the defendant designated the consultant as its expert witness in that same

litigation on the issue of business valuation. The plaintiff moved to preclude the consultant from

testifying, citing RPC 3.4(b). The trial court agreed in part, precluding the consultant from

offering expert testimony but allowed him to offer factual testimony and lay opinions. However,

the Supreme Court found that even though RPC 3.4(b) was likely violated in that case since the

witness was retained during litigation, ethical rules and evidentiary rules are not necessarily

coterminous, and that "the prohibition on paying witnesses a contingency fee for their testimony

---

[3] Senior Judge Krieger determined that a Rule 403 balancing was appropriate to determine whether to bar Mr. O'Driscoll's opinion testimony, because "Owners' motion does not materially address the Rule 403 inquiry, instead relying strictly on a *per se* rule of exclusion that *Murray* and this Court reject." Thus, no decision to exclude Mr. O'Driscoll's opinion testimony was reached. *Hiland Hills*, 2022 U.S. Dist. LEXIS 110101 *28. Since there was also no allegation of fraud against Mr. O'Driscoll in *Hiland Hills*¸ it is not clear how the balance would have been determined.

does not necessarily mean that those witnesses may never testify at trial." *Id.*, 374 P.3d at 450

(emphasis in original). The Court undertook a Colo.R.Evid 403 analysis:[4]

> We begin by noting CRE 402's general directive that '[a]ll relevant evidence is admissible,' unless the United States Constitution, the Colorado Constitution, a state statute, the evidence rules, or the Supreme Court prohibits that evidence. Relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' CRE 403. In weighing those dangers and considerations, the proffered evidence 'should be given its maximal probative weight and its minimal prejudicial effect.' *People v. Dist. Ct. of El Paso Cty.*, 869 P.2d 1281, 1285 (Colo. 1994). Thus, the evidentiary rules strongly favor the admission of relevant, material evidence. *Palizzi v. City of Brighton*, 228 P.3d 957, 962 (Colo. 2010).
>
> To give effect to this principle and to the evidence rules' overarching goals, RPC 3.4(b)'s ethical prohibition on contingent fee agreements for witnesses should not be interpreted to require a rule of automatic exclusion. Rather, we must examine the purpose behind the ethical rule to determine whether and how it should be applied during trial. RPC 3.4(b) ultimately aims to protect the integrity of trials by preventing lawyers from improperly inducing witnesses to offer biased testimony. *See Liebnow*, ¶ 13, 296 P.3d at 113. When a lawyer procures the testimony of an improperly compensated witness at trial, it implicates the witness's potential bias. *See Jamaica Time Petroleum, Inc. v. Fed. Ins. Co.*, 366 F.2d 156, 158 (10th Cir. 1966). But bias is an issue of the credibility and weight to be afforded the witness's testimony rather than the witness's competency. *E.g., id.* And, importantly, a witness's credibility is for the fact-finder to decide, subject to the trial court's discretion. *See id.*

*Id.*, 374 P.3d at 451. Certainly, the consultant retained in *Murray* was hired during litigation

specifically to assist in gathering support for the defendant's counterclaims, and thus the

public policies underlying RPC 3.4(b) were implicated. But here, Mr. O'Driscoll was

retained directly by Canyon Club long before any litigation and long before Canyon Club had

legal counsel in the dispute. And since American Family will argue that Mr. O'Driscoll's

specialized knowledge against Canyon Club suggests intent to misrepresent, the aims of RPC

3.4(b) to "protect the integrity of trials by preventing lawyers from improperly inducing

---

[4] Fed.R.Evid. 601 provides in material part: "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."

witnesses to offer biased testimony" will be subverted by American Family's tactic. Consequently, to the extent this Court evaluates the issue under Rule 403, the balance strongly favors admission of Mr. O'Driscoll's relevant evidence.

Another case argued by American Family followed a Rule 702 analysis in dealing with the issue of opinion testimony from a public adjuster to be compensated with a contingency fee. In *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F.Supp.3d 1187, 1210 (D. Colo. 2022), Judge Moore essentially applied a *per se* rule under Rule 702 that "[o]nce the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded." *Id.* at 1210, citing *Perfect 10, Inc. v. Giganews, Inc.*, 2014 U.S. Dist. LEXIS 185066, 2014 WL 10894452 at *4 (D. Colo. Oct. 31, 2014).

However, neither Colorado nor the Tenth Circuit have adopted a *per* se rule, and the circumstances considered in *Wheatridge* were materially different than supported in this record. The insurance company in *Wheatridge* had not claimed that public adjuster's "specialized knowledge" had been used it to commit a fraud, as American Family claims here. So, while Judge Moore balanced the potential prejudice (apparently under Rule 403) against the harm to the plaintiff in *Wheatridge* and concluded that there were other witnesses plaintiff could call to provide the jury with similar specialized knowledge on material issues, the balance in this case tips decisively the other way.

Here, Mr. O'Driscoll was involved from the initial reporting of the claim, had all the interactions with American Family's numerous representatives, conducted numerous personal inspections of the buildings with American Family's representatives and both

10

parties' experts, observed and documented as much as possible the restoration of Building 14, and was the sole contact with American Family throughout adjusting of the claim. Some of the communications between Mr. O'Driscoll were written, but many, including all the communications during on site inspections where the conditions of the buildings were jointly investigated and discussions occurred, were oral, and there is no record that another retained expert can review to consider the significance of those communications. Only Mr. O'Driscoll, of all the witnesses to the claim adjustment, inspections, and disagreements between the parties, was involved in them all. The alternative available in *Wheatridge*, in the exercise of the court's discretion, is not viable or fair here – Mr. O'Driscoll is being attacked personally and professionally for perpetrating an alleged fraud, and since his intent must be discerned in light of his basis for his actions, observations, and estimates, limiting Mr. O'Driscoll to mere lay opinions is highly prejudicial to Canyon Club. And frankly, American Family demonstrates no potential prejudice to it from having the target of its accusations judged in light of his full work product.

None of the other cases cited by American Family  involve a witness in the position of Mr. O'Driscoll – most cases involve a *retained* expert that was *not* involved in the underlying events in dispute – and none of those cases can be stretched to preclude his testimony solely by virtue of the fee Impact may be paid.

- *Haden v. Green*, No. 10-CV-0515-RBJKMT, 2012 WL 5493976, at *2 (D. Colo. Nov. 13, 2012)(in *dicta*, the court expresses doubts that indigent *pro se* inmate plaintiff could retain experts on contingency fee basis since "[e]xpert testimony is supposed to be independent, and serving on a contingency basis would raise ethical as well as credibility concerns.");

11

- *Colorado Hosp. Servs. Inc. v. Owners Ins. Co.*, No. 14-CV-001859-RBJ, 2015 WL 4245821, at \*2 (D. Colo. July 14, 2015) (in determining whether a retained appraiser under property insurance policy may be deemed "impartial" when compensated by a contingency fee, court determines that "[a]n expert whose fee might be materially affected by the opinion he expresses cannot be considered to be 'impartial' under any reasonable definition of that term.");

- *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (seller of real property was allowed to call attorneys in disputed transaction to testify to meaning of contract language, not as experts, and court allowed cross-examination for bias. On appeal, the court cites in *dicta* that "[t]he majority rule in this country is that an expert witness may not collect compensation which by agreement was contingent on the outcome of a controversy."). At most, this case stands for the proposition that the opinion testimony given by the seller's attorneys regarding the meaning of language in an agreement they drafted for the transaction in dispute was admissible under Fed.R.Evid. 701. Neither Rules 701 nor 702 were mentioned in the decision, but either could apply to the circumstances;

- *Straughter v. Raymond*, No. CV 08-2170 CAS CWX, 2011 WL 1789987, at \*2-3 (C.D. Cal. 2011) (granting motion to exclude a *retained* expert because the expert was working under a contingency-fee arrangement);

- *Followwill v. Merit Energy Co.*, No. 03-cv-62-D, 2005 WL 5988695, at \*1 (D. Wyo. Apr. 11, 2005)(*retained* expert on calculation of oil and gas royalties stricken because compensated with contingency fee);

- *Cosgrove v. Sears Roebuck and Co.*, No. 81 Civ. 3482 (CSH), 1987 WL 33595 (S.D.N.Y. Dec. 21, 1987) (excluding testimony from *retained* expert witness because the witness was hired on a contingency fee basis, but allowing witness to be replaced);

- *City & Cnty. of Denver v. Bd. of Assessment Appeals*, 947 P.2d 1373, 1379 (Colo. 1997) (*retained* appraisers to provide expert opinions in exchange for compensation contingent on reduction in tax liability stricken.).

## Conclusion

American Family will undoubtedly make the jury aware through cross-examination that Impact may receive a fee contingent on payment by American Family as a result of the lawsuit, and this normal means of exposing potential bias and possibly undermining credibility of a witness sufficiently "protect[s] the integrity of trials by preventing lawyers from improperly inducing witnesses to offer biased testimony." In the unique circumstances of this trial, where American Family attacks the professional standing of Canyon Club's adjusting representative, American Family's Motion seeking to exclude Mr. O'Driscoll's opinion testimony should be denied.

Respectfully submitted,

By: s/ Christopher N. Mammel
Christopher N. Mammel
Merlin Law Group, P.A.
1001 17th Street, Suite 1150
Denver, CO 80202
Telephone: (720) 665-9680
Facsimile: (720) 665-9681
Email: cmammel@merlinlawgroup.com

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the proportionally spaced serif font requirement (here, Times New Roman), and that it also complies with the 4,000 word limit requirement, as those requirements are set forth in Judge Domenic's Civil Practice Standards I(D) and III(A)(1). Regarding the word limit, the foregoing response contains 3,959 words (including footnotes but excluding the caption, signature block, certificate of service and this certificate of compliance).

s/Christopher N. Mammel

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on November 30, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Megan Treseder, Esq.
Terence M. Ridley, Esq.
Dean Neuwirth, Esq.
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203
Telephone:  303.839.3800
Facsimile:  303.839.3838
Email:  ridley@spencerfane.com; dneuwirth@spencerfane.com; and
mtreseder@spencerfane.com

Habib Nasrullah, Esq.
Wheeler Trigg O'Donnell
370 17th Street, Suite 4500
Denver, CO 80202
Tel: 303.244.1960
Fax: 303.244.1879
Email: nasrullah@wtotrial.com

14

By: s/Tamara Chen-See
Tamara Chen-See