**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:18-cv-00683-DDD-STV

CANYON CLUB CONDOMINIUM OWNERS ASSOCIATION,

      Plaintiff/Counterclaim Defendant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a corporation,

      Defendant/Counterclaim Plaintiff.

---

## ORDER ON MOTIONS TO EXCLUDE TESTIMONY

---

Canyon Club Condominium Owners Association initiated this suit against American Family Mutual Insurance Company in 2018 after a hail storm in 2016 caused damage to property covered under an insurance policy. Canyon Club is a residential community association in Denver. Doc. 86 at 2. It purchased a policy from American Insurance to insure its premises and received a partial payout after the storm. *Id.* at 1-3. The parties have been unable to agree on the appropriate cost of repairs or on the scope of insurance coverage. They now accuse each other of breach of contract, bad faith, and other claims.

The parties have each disclosed multiple expert witnesses they intend to rely on at trial. Both parties now seek to disqualify some of these experts under Fed. R. Evid. 702. Docs. 195–98, 223. Canyon Club seeks to exclude the testimony of Steven Plitt. Doc. 198. American Insurance seeks to exclude the testimony of Derek O'Driscoll, Charles Miller, Elliot Flood, and Edward Fronapfel. Docs. 195–97, 223. American Insurance's

- 1 -

motion to exclude Derek O'Driscoll's testimony is granted. Doc. 195. The other motions are denied. Docs. 196–98, 223.

## LEGAL STANDARDS

### A. Legal Standard

Federal Rule of Evidence 702 provides the standard for admission of expert testimony in a civil case:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

While the proponent of expert testimony is not required to prove that the expert's opinion is correct, it bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). A district court's role in weighing expert opinions against these standards is that of a "gatekeeper." See *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A court's

> judgment must therefore be guided by consideration of whether the testimony of the attorney expert aid[s] the jury in its determination of critical issues in this case. [Courts] must also consider, however, whether the expert encroach[es] upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability.

*Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988), cert denied, 488 U.S. 1008 (1989). "In no instance can a witness be permitted to define

the law of the case" nor may an expert "attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809–10.

**DISCUSSION**

### I. Derek O'Driscoll May Not Give Expert Testimony in a Case in which He Holds a Direct Financial Interest.

Mr. O'Driscoll is a licensed public adjuster who was hired by Canyon Club to investigate the damage caused by the hail storm. Doc. 206 at 2. Before any litigation in this case began, Canyon Club and Mr. O'Driscoll entered into a contingent compensation agreement, by which Mr. O'Driscoll would be paid 10% of "all funds paid by" American Insurance "for any recoveries or settlements or from any and all proceeds from settlement and/or judgments which result from litigation pursued by [Canyon Club] in excess of $0." Doc. 175-8 at 3.

Since then, Mr. O'Driscoll has been a crucial participant in the events that underly this case. He investigated the damage and prepared a claim, and "work[ed] with American Family and its decision-makers throughout that time." Doc. 206 at 4. He has often been the point of contact between Canyon Club and American Insurance. Doc. 175-9, at 2. He was also part of the decision-making process to complete repairs on Building 14 as an exemplar building to extrapolate total costs, and was frequently involved in inspections during the completion of that project. Doc. 195 at 5.

Neither party disputes Mr. O'Driscoll's credentials, nor the relevance of his proposed testimony. Instead, American Insurance asserts that Mr. O'Driscoll should not be permitted to testify as an expert, because his direct financial interest in the outcome of case renders his testimony unreliable. A district judge has broad discretion on how to measure

- 3 -

reliability and whether the proposed testimony is in fact reliable. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000).

It is "a settled principal of American law [that] expert witnesses should not receive contingent fees." *City and Cnty. of Denver v. Bd. of Assessment Appeals*, 947 P.2d 1373, 1379 (Colo. 1997). This public policy against contingency fees for experts is reflected in professional rules of conduct, legal treatises, and even in a report written by one of Canyon Club's own experts. See, e.g., Colo. R. Prof. Conduct 3.4(b), cmt. 3 ("It is improper to pay any witness a contingent fee for testifying."); Damian Capozzola, *Expert Witnesses in Civil Trials: Effective Preparation and Presentation* § 7:7 (2022); Greg Gerganoff, *Lawyers, Expert Witnesses and Ethics-Beyond Mere Testimony* (April 22, 2019).

While this rule is widely accepted, the Tenth Circuit has not explicitly ruled on the matter. "But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. And Colorado cases consistently disapprove of experts receiving contingency fees. *See City and Cnty of Denver*, 947 P.2d at 1379; *Buckley Powder Co. v. State*, 70 P.3d 547, 559 (Colo. App. 2002) ("An expert witness should not receive a contingent fee because the expert may thereby be improperly motivated to enhance his or her compensation and thus lose objectivity."). Recently, federal courts have interpreted this standard to subject expert witness either to per se exclusion based on contingent compensation, or to a balancing test in which the court must "balance the probative value of the evidence against the danger of unfair prejudice." *Compare Wheatridge Office, LLC v. Auto-Owners Insurance Company*, 578 F.Supp.3d 1187, 1211 (D. Colo. Jan 4, 2022) and *Girard Offices, LLC v. American Zurich Insurance Co.*, 2022 WL 4467240, 19-cv-03590-PAB at *9 (D. Colo. Sep. 26, 2022). Under either analysis, Mr. O'Driscoll's expert testimony

should be excluded. If there is a per se bar on contingency fee agreements, as in *Wheatridge Office*, then under no circumstances may Mr. O'Driscoll testify as a witness. If his expert testimony must be considered under a balancing test, I find that the probative value of his expert opinions is less than the likelihood of prejudiced caused by the financial incentive to "overstate and exaggerate his positions in order to encourage the highest recovery possible. Additionally, as noted above, to compensate a witness this is improper." *Girard Offices*, 2022 WL 4467240 at *11.[1] Mr. O'Driscoll's exclusion as an expert, moreover, does not

[1] Worth noting too is Judge Krieger's order in *Hiland Hills Townhouse Owners Association v. Owners Insurance Company*, 22 WL 2198262, No. 17-cv-01773 (D. Colo. Feb. 8, 2022), examining Mr. O'Driscoll's relationship with Canyon Club's counsel and its impact on his expert reliability, circumstances which are repeated in this case.

> [T]he Court is compelled to comment on the degree to which the record discloses an atypical and unusually close relationship between Mr. O'Driscoll and Hiland's counsel in this case, Mr. Mammel and the Merlin Law Group. Mr. O'Driscoll's CV identifies his "Claims Adjusting, Insurance Policy Coverage Interpretation and Legal Training" credentials. Among the training programs Mr. O'Driscoll lists are more than a dozen training programs presented by the Merlin Law Group itself. Although some of those presentations involve matters entirely unrelated to this case – *e.g.* "Wildfire Claims 101." "Practical Aspects to Protect Hurricane Irma Awards" – others would seem to have direct application to these issues in this litigation, *e.g.* "Decoding Hail Damage Insurance Denials." "Understanding Roofs: How To Talk About Roofs With The Insurance Adjuster." Even more telling is Mr. O'Driscoll's list of trainings under the heading "Forensic Investigations, Damage Assessment and Meteorological Training" in his CV. That category discloses numerous Merlin Law Group-provided trainings on issues that are directly applicable to the opinions Mr. O'Driscoll is designated to offer in this case, including "Analysis of Meteorological Reports, Cosmetic vs. Functional Damage Thresholds of Hail Damage," and "Meteorology of Major Hailstorms in 2015 & 2016." Merlin Law Group also provided Mr. O'Driscoll with training in how to

preclude Canyon Club from calling him as a fact witness. Indeed, Canyon Club stresses that much of Mr. O'Driscoll's probative value as a witness in this case is derived from his "real-time observations" of the events (Doc. 206 at 6), something he will still be able to testify about as a fact witness.

Canyon Club insists that this case is unique because Mr. O'Driscoll is a non-retained expert whose financial interest predates the inception of this litigation. But Canyon Club provides no reason why this should affect Mr. O'Driscoll's reliability as an expert. It is the financial interest in the outcome of the case which creates the conflict of interest, and when that financial interest arose makes no difference to possible influence it will have on the witness's reliability. *Wheatridge Office*, 578 F.Supp.3d at 1211 (excluding expert testimony of a public adjuster based on a pre-existing 10% contingency fee). Also telling is the fact that Canyon Club's defense of Mr. O'Driscoll does not identify a single case in which an expert witness was permitted to testify after obtaining a financial interest in the case, regardless of when that financial stake arose.

## II. Charles Miller, Elliott Flood, and Steven Plitt May Provide Expert Testimony of Industry Standards.

---

devise repair estimates in seminars entitled "Professional Estimating vs. Standard Estimating Practices" and "Building Cods [sic] and the Reconstruction Environment." It is difficult to dispel the concerns that the opinions Mr. O'Driscoll is presenting as an expert here are specifically derived from training he has received from Hiland's counsel, effectively putting counsel's words in Mr. O'Driscoll's mouth to then be presented to the factfinder as testimony by an expert."

*Id.* at *10-11 (internal citations omitted). While Judge Krieger found that the motion to exclude Mr. O'Driscoll's expert testimony was not appropriate given the timing and stage of that case, it is appropriate here.

Charles Miller is offered by Canyon Club as an insurance claim-handling expert. Elliot Flood is offered by Canyon Club as an insurance fraud rebuttal expert. Steven Plitt is offered by American Insurance as a claim handling and bad faith expert. Like so many pots and kettles, both parties seek to exclude opposing experts for offering "impermissible legal conclusions" on nearly identical matters of reasonableness and bad faith, while simultaneously defending their own expert as opining on industry standards for insurance claims.

In *Specht*, the Tenth Circuit held that "expert[ ] testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." 852 F.2d at 809–10. It is under this standard that the parties seek to exclude opposing experts. But an expert may opine on factual issues, including the industry standards in an expert's field. *See O'Sullivan v. Geico Casualty Co.*, 233 F.Supp.3d 917, 929 (D. Colo. Feb. 7, 2017) (qualified insurance experts "may testify as to insurance industry standards"). "While an expert may not state legal conclusions, Fed. R. Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact." *Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992). Furthermore, an expert may "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht*, 853 F.2d at 809.

## A.    Opinions of Charles Miller

American Insurance seeks to exclude certain portions of Mr. Miller's expert opinion that concern whether the insurance policy covered ventilation, roof decking, chimney bricks, and fences, and whether the anti-misrepresentation clause in the policy can be breached by an agent, as opposed to Canyon Club itself. American Insurance also challenges

Mr. Miller's opinion that American Family did not rely on Canyon Club's actions to its detriment. American Insurance challenges these opinions as impermissible legal conclusions because it claims that Mr. Miller is offering an interpretation of the policy's contractual language, and that "the legal obligations arising from a contract" and "the meaning of the contract terms at issue" are impermissible under *Specht*.

Canyon Club responds that Mr. Miller's opinions are based on industry standards for insurance claim adjusting, a fact that American Insurance concedes in its reply. Doc. 215 at 2. American Insurance may be correct that, severed from context, Mr. Miller's opinions may have the appearance of legal conclusions. But viewed in context, they do not reflect an interpretation of the insurance policy and its obligations *as a matter of law*. They reflect an opinion as to how insurance industry standard and practice would comply with the obligations of the insurance policy. These conclusions are appropriate for an expert witness and may assist the jury in its determination of whether or not American Insurance or Canyon Club violated their legal duties. "Fed. R. Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact." *Phillips*, 956 F.2d at 952.

### B.    Opinions of Elliott Flood

American Insurance also seeks to exclude the majority of Elliot Flood's expert opinion. This includes Mr. Flood's opinion that American Insurance's fraud allegations are "baseless," his opinion that American Family improperly withheld roof shingles, his rebuttal of American Insurance's experts, and his opinion that American Insurance likely has not disclosed all fraud-related data and unethically failed to disclose a fraud report.

As with Mr. Miller, Canyon Club argues that Mr. Flood based his conclusions on whether or not American Insurance complied with industry standards for reasonable fraud investigations. They point out that Mr. Flood uses the term "baseless" as one which claims adjusters are familiar with, and is a "basic concept" for adjusters. Doc. 209 at 2–3. They similarly make the argument that disclosures, whether of tested rooftiles, fraud-related data, or fraud reports, are matters of industry standard. *Id.* at 3–7. These conclusions are appropriate for an expert witness and may assist the jury in its determination of whether or not the insurance claim was investigated reasonably. To the extent that American Insurance believes that Mr. Flood's opinions are speculative or unsupported, it may bring these concerns to bear during cross-examination, if it chooses. *See Robinson v. Mo. Pac. R.R.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion.").

### C.    Opinions of Steven Plitt

Canyon Club likewise seeks to exclude certain opinions of Steven Plitt, which are offered as opinions as to the reasonableness of American Insurance's actions. Canyon Club asserts that Mr. Plitt's opinions are legal conclusions that usurp the role of the court, and that Mr. Plitt takes on the role of advocate by summarizing evidence and arguing facts.

American Insurance responds that Mr. Plitt's opinions consisted solely of whether not American Insurance's actions were "consistent with industry standards." Doc. 204 at 2. American Insurance quotes *Specht* for the principle that an expert may "explain[ ] a discrete point of law which is helpful to the jury's understanding of the facts." 853 F.2d at 810.. But like its own experts, Mr. Plitt "may testify as to insurance

industry standards" *O'Sullivan*, 233 F.Supp.3d at 929. Also like those experts, to the extent that Canyon Club believes Mr. Plitt's opinions are speculative or unsupported, it may bring these concerns to bear during cross-examination, if it chooses. *See Robinson* 16 F.3d at 1090.

It is true that in places, these experts toe the line of what is permissible for expert opinions. But expert testimony may "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht*, 853 F.2d at 809. While some danger may exist that these opinions, regarding the industry standards for reasonableness or bad faith, will stray into the realm reserved for finders of fact and law, excluding the testimony is too drastic a measure. A judge's role in assessing proposed expert testimony is not "intended to serve as a replacement for the adversary system." *United States v. Nacchio*, 555 F.3d 1234, 1280 (10th Cir. 2009). And *in limine* motions, trial objections, vigorous cross examination, or limiting instructions will better address the issues that the parties are concerned with, should they arise.

### III. Edward Fronapfel's Testimony is admissible under Rule 702.

Finally, American Insurance moves to exclude the expert testimony of Edward Fronapfel, the CEO of SBSA, an engineering firm retained by Canyon Club. Mr. Fronapfel was involved in multiple reports issued over the course of the dispute. American Insurance suggests that the reports are without sufficient supporting facts or reliable methodology, except for the first, which attributed water damage not to the instigating hailstorm, but to preexisting ventilation problems. Of note, American Insurance claims that Mr. Fronapfel based his opinions solely on the statements of one resident, and never personally inspected the roofs. Doc. 223 at 8–11. Similarly, American Insurance objects to Mr. Fronapfel's opinions that certain repairs were recommended to conform

with required building codes, because he does not cite to specific codes. *Id.* at 11.

Canyon Club first responds by noting that all reports prepared by SBSA "follow the ASCE Guideline for Condition Assessment of the Building Envelope, ASCE Standard 30-14, which provides a guideline and methodology for assessing the condition and performance of existing building envelope systems and components, as well as identifying problematic and dysfunctional elements." Doc. 226 at 3, n.1. Canyon Club also points to language in the report and the subsequent supplemental report describing a methodology that involved "detailed condition assessment, . . . coupled with the opportunity to observe and note conditions revealed during the intrusive restoration performed on Building 14," and which "incorporates observations from extensive destructive testing to reveal evidence and sources of moisture intrusion." *Id.* at 7–9.

Regarding the sufficiency of the evidence, Mr. Fronapfel's analysis identifies a vast sea of building conditions and testing, much of which is documented by photographs, used to reach his conclusions, in addition to the testimony of Ms. Becker, a resident of one of the units. *Id.* at 12–13. American Insurance bemoans that Mr. Fronapfel did not base this analysis on his personal observations of the buildings or a personal interview with Ms. Becker. But such personal, hands-on knowledge is not required of an expert witness. *Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

As to Mr. Fronapfel's opinions on repairs required by building codes, Canyon Club claims that industry standards do not require specific citations to building codes, and that even if they did, the codes which American Insurance identifies would not be applicable, as Mr. Fronapfel

concluded in a separate rebuttal report. *See* Doc. 138, 140. Putting aside whether the rebuttal report is relevant to Mr. Fronapfel's exclusion, an expert can hardly be expected to explain in his report every standard which he concludes is not applicable. And Canyon Club further argues that Mr. Fronapfel's opinions were rendered consistent with how an engineer would present opinions to the relevant city and county authorities. This is sufficient. *Goebel v. Denver and Rio Grand Western Railroad Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (experts must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (quoting *Kumho Tire*, 526 U.S. at 152).

American Insurance's objections may be probative of the report's weight when considered by a factfinder. *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996). But, again, that weight should be tested by vigorous cross-examination, and not through motions to exclude testimony. *See Robinson v. Mo. Pac. R.R.*, 16 F.3d 1083, 1090 (10th Cir. 1994). These objections may be reasons a jury could reject Mr. Fronapfel's opinions, but they do not warrant excluding his opinion entirely.

## CONCLUSION

It is **ORDERED** that:

Defendant American Insurance's Motion to Exclude Expert Testimony of Derek O'Driscoll, **Doc. 195**, is **GRANTED**; Defendant's Motions to exclude experts Charles Miller, Elliot Flood, and Edward Fronapfel, and Plaintiff's Motion to exclude expert Steven Plitt, **Docs. 196–98, 223**, are **DENIED**.

- 12 -

DATED: September 29, 2023  BY THE COURT:

_____

Daniel D. Domenico

United States District Judge