## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:18-cv-00683-DDD-STV

CANYON CLUB CONDOMINIUM OWNERS ASSOCIATION,

      Plaintiff/Counterclaim Defendant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a corporation,

      Defendant/Counterclaim Plaintiff.

---

### ORDER ON PENDING MOTIONS

---

Canyon Club Condominium Owners Association is a residential community association in Denver. Doc. 86 at 2. In 2016, a hailstorm caused damage to Association property covered by an insurance policy purchased from American Insurance. After the hailstorm, Canyon Club and American Insurance began the process of adjusting the insurance claim. The parties were unable to agree on the proper scope or cost of covered repairs. Canyon Club estimated that the cost to repair the damage was approximately $8 million, but American Insurance paid only $1.8 million. In 2018, Canyon Club sued for the full amount of covered benefits. Canyon Club later endeavored to complete repairs on one of its 41 damaged buildings using its own funds. This project cost half a million dollars, and Canyon Club extrapolated from that project that its total cost of repairs would not be $8 million, but nearly $20 million. American Insurance still disputes the scope and cost of the repairs that Canyon Club seeks as covered benefits.

Canyon Club's operative second amended complaint asserts four claims for relief: (1) breach of the contractual duty to investigate, adjust and pay benefits covering the cost to repair or replace damage; (2) breach of the common-law duty of good faith and fair dealing; (3) unreasonable delay or denial of benefits in violation of Colorado statute; (4) declaratory relief discharging Canyon Club's duties to perform following American Family's breach. Doc. 86. American Family's answer denies the allegations and makes three counterclaims for: (1) declaratory judgment that Canyon Club has not complied with its contractual duties; (2) alternative declaratory judgment relieving American Family of obligations to pay; (3) breach of contract by fraud or misrepresentation; (4) breach of the implied covenant of good faith and fair dealing; (5) reimbursement or recoupment of payments made. Doc. 87. The parties filed multiple motions for partial summary judgment. Docs. 162, 163, 165, 166.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper, and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

- 2 -

In deciding whether the moving party has carried its burden, a court does not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145. But neither unsupported conclusory allegations nor mere traces of evidence are sufficient to demonstrate a genuine dispute of material fact on summary judgment. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009). And if "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

### I. American Insurance's Motion for Partial Summary Judgment on Claims Arising from Vented Assemblies (Doc. 162)

American Insurance's first motion for partial summary judgment does not seek dismissal of any specific claim nor any specific part of any specific claim. Instead, it argues that it is not liable for any repair costs resulting from installing ventilation systems in the hail-damaged properties, as they are allegedly not covered by the insurance contract.

American Insurance presents the issue as straightforward: The insurance policy covered only "direct physical loss . . . or damage . . . caused by or resulting from" the hailstorm. Doc. 162–2 at 7. The hail-damaged buildings did not have ventilation systems prior to the hailstorm. Doc. 162 at 8. So the ventilation system was not a direct loss caused by the hail, and the cost to install them cannot be covered by the policy, as a matter of law. *Id.* at 8–9; *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009) (interpreting a contract is a "matter of law").

Canyon Club responds that direct physical loss triggers coverage under the policy, but that coverage can then extend beyond the direct physical loss caused by hail. Doc. 176 at 14. Specifically, Canyon Club argues that once coverage is triggered, American Insurance is required under the terms of the policy to provide "the cost to repair or replace the damaged item with an item of like kind and quality, less depreciation." Doc. 176 at 1415. When it comes to roofs, American Insurance's internal guidelines require certain components of the roof, including roof vents, to be included in any estimate if "local building codes require them and the policy provides such coverage." Doc. 176 at 6. American Insurance does not dispute these internal guidelines. Doc. 192 at 4. It appears that the policy also extends up to $300,000 per building in additional coverage if "ordinance of law" regulates "construction or repair of buildings" and the building sustains direct physical damage resulting in code enforcement. Doc. 162–2 at 100; *see also Dupre v. Allstate*, 62 P.3d 1024, 1030 (Colo. App. 2022) (rejecting a trial court's holding that insurance provider need not pay for code-compliant repairs when dwelling was non-compliant prior to damage).

Canyon Club's argument that the new ventilation system is covered merely by the requirement that damages be repaired or replaced with items of "like kind and quality" is untenable. That language entitled them to have the costs of a roof comparable to their old one. There is no argument that the roof they seek to have American Insurance pay for now is not comparable to the damaged one—it is upgraded. *See* Doc. 162 at 4; Doc 176 at 2 (agreeing with undisputed fact that "the ventilation was not compliant with the [building] code at the time"). Canyon Club does, however, have an argument that the "ordinance of law" provision may apply here. American Insurance agreed in that provision to provide upgrades (to at least a degree) when necessitated by code enforcement.

The present state of the briefing and record, however, leaves me unable to answer as a matter of law whether and how that provision applies here. The parties dispute, for example, whether hail-damage repairs triggered building code enforcement as to ventilation systems installed in the exemplar building. Doc. 190 at 5. They further dispute whether building code requires such ventilation systems in this case. *Compare Id.* at 10 ("code does not require installing Vented Assemblies when replacing shingles") and Doc. 176 at 10 ("SBSA's recommendations for replacing the buildings' hail-damaged roofing systems, including . . . new vented roof deck systems, conform to the current building code, manufacturer instructions, and industry standards."). Even if it were determined that the "ordinance of law" provision applies, it is also unclear how much of the additional costs would be covered by it. American Insurance suggest that a "large portion" of the repairs is associated with the ventilation. Doc. 162 at 2. Due the integrated nature of the roof as a structure, those costs cannot be parsed at this stage, nor does American Insurance strive to in its motion. Given this, and given that this motion does not point to any claim or specific part of a claim on which judgment can be entered, the motion is denied. It is possible, however, that some of these issues could be resolved or clarified through additional motions practice or through jury instructions.

## II. American Family's Motion for Partial Summary Judgment on Bad Faith Damages Above the Statement of Loss (Doc. 163)

Canyon Club's second and third claims allege that American Insurance acted in bad faith, seeking damages under common law bad faith, and statutory damages under section 10-3-1116(a) of Colorado's revised statutes. Doc. 86 at 10–16. American Insurance seeks to limit these damages on summary judgment. It argues that, as a matter of law, it cannot have acted in bad faith by refusing to pay benefits based on a

nearly $20 million cost estimate that was not proffered until litigation began. It argues instead that bad faith damages, if they are received, should be adjudged solely on the $8 million claim for benefits that it denied before litigation began.

This theory is based on a series of cases holding that the duty of an insurance company to actively seek expedient payment and resolution of claims is suspended during the pendency of litigation. See *Rabin v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012); *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012); *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). That suspension prevents further delay and denial from being held against an insurance company during litigation, but it does not impact what benefits are considered for calculating damages.

If Canyon Club is able convince a finder of fact that American Insurance unreasonably delayed or denied payment under C.R.S. § 10-3-1116(a) prior to litigation, however, American Insurance will be liable for "reasonable attorney fees and court costs and two times the *covered benefit*." (emphasis added). The denial or delay of benefits is the triggering event, but the statute does not affix the amount of damages to the dollar amount *denied*, but the dollar amount *covered*. Meaning that if American Insurance denied an $8 million claim in bad faith, but a finder of fact later determines that the covered benefits amounted to $20 million, the penalty is two times the amount determined by the fact finder to be the covered benefit ($20 million), not the amount which American Insurance originally denied ($8 million). The remedy for common law bad faith is similarly unconcerned with what amount American Insurance allegedly denied. Instead, common law bad faith damages are based on actual losses, economic and non-economic, as determined by a finder of fact. See *Travelers Insurance Co. v. Savio*, 706

P.2d 1258 (Colo. 1985); *Lira v. Shelter Ins. Co.,* 903 P.2d 1147, 1150 (Colo. App. 1994). The actual amount of loss incurred as a result of the hailstorm is a material factual dispute in this case, and American Insurance has not shown that, as a matter of law, it is entitled to judgment on Canyon Club's second and third claims for relief. The motion for summary judgment is denied.

### III. American Family's Motion for Partial Summary Judgment on claims for Declaratory Relief related to Proof of Loss Allegations (Doc. 165)

American Insurance seeks summary judgment on Canyon Club's fourth claim for a declaratory judgment. That claim seeks a declaration that Canyon Club need no longer comply with the insurance policy's terms. More specifically, Canyon Club believes that American Insurance's counterclaims have relieved Canyon Club of its duties under the contract, so it need not to honor a request from American Insurance to submit an updated Proof of Loss after its cost estimates increased from $8 million to $20 million. American Insurance argues that its counterclaims seek only recoupment of benefits paid, not rescission of the contract.

But even if American Insurance is correct that its counterclaims do not lead to rescission, Canyon Club may be relieved of its obligations under the contract if it is correct that American Insurance first breached the contract. It is a well settled rule that a party who materially breaches a contract cannot complain if the other party then refuses to perform. *See e.g., Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981); *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 640-41 (Colo. App. 1999). As noted above, if American Insurance breached the contract, the likely result is that the additional costs estimated will be recoverable as unpaid benefits, regardless of whether an additional Proof of Loss was submitted. Which of the parties first breached the

contract, and whether those breaches were material, or in bad faith, remain disputed questions of fact. Canyon Club's claim for declaratory relief cannot be resolved without answers to these disputed questions, so summary judgment is inappropriate, and American Insurance's motion is denied.

## IV. Canyon Club's Combined Motions for Partial Summary Judgment on American Insurance's Defenses and Counter-claims (Doc. 166)

Canyon Club's combined motions for partial summary judgment address the defenses and counterclaims that American Insurance stated in its amended answer. Doc. 87. The combined motion seeks judgment on four categories of claims.

### A. Defenses and Counterclaims Alleging Violation of the Co-operation and Anti-Fraud Provisions of the Policy

American Insurance alleges that Canyon Club, through a series of knowing and fraudulent misrepresentations, submitted inflated and exaggerated repair costs in violation of these provisions. Canyon Club presents three reasons why, it says, it is not liable for any alleged misrepresentations.

#### i. Canyon Club's Agency Relationship with Impact and the Policy's "You" Language

First, Canyon Club distinguishes its own actions from the actions of its insurance adjusters. Under the insurance contract, American Family disclaimed any obligation to pay benefits in the case of fraud, conceal-ment or misrepresentation by "you or any other insured." Doc. 1-7 at 112. The policy clarified that "throughout this Coverage Form the words 'you' and 'your' refer the Named Insured . . ." *Id.* at 51. From this, Can-yon Club argues that it cannot be liable for fraud or misrepresentations made by its adjusters, who are not the "Named Insured." And Canyon

Club further argues that all of the alleged misrepresentations are attributable to actions by its adjusters.

As a matter of law, Canyon Club is liable for any misrepresentations made by its adjuster. Colorado law treats insurance adjusters as agents of the insured. *See Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 231 (Colo. 1988). "[A] principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472 (Colo. 1995) (en banc) (quoting *Restatement (Second) of Agency* § 261 (Am. Law Inst. 1958)). Since Canyon Club authorized its adjuster to make representations to American Insurance on its behalf, it is liable to American Insurance for any misrepresentations contained in those representations. By defining "you" as the "Named Insured" the policy in no way undoes these basic tenets of contract and common law. American Insurance's refusal to accept communications coming from adjusters, and instead requiring that they be sent from Canyon Club, similarly does not interfere with Canyon Club's principal-agent relationship with its adjusters. That relationship could only be altered or terminated by Canyon Club or its adjusters. See Restatement (Second) of Agency § 119.

Canyon Club's actions and approvals, moreover, were intermingled with the actions of its adjusters. The Proof of Loss statement which included the alleged misrepresentations was signed by Canyon Club's chairman. Doc. 165–4. American Insurance alleges that Canyon Club also had knowledge of defects attributable to causes other than the hailstorm, which it nonetheless instructed its contractors and adjusters to include in the repair cost. Doc. 175 at 18. To the extent Canyon Club disputes such knowledge and approval, that only goes to demonstrate a material factual dispute which precludes summary judgment.

### ii. Waiver

Second, Canyon Club asserts that, as a matter of law, American Insurance has waived its claims of misrepresentation, fraud, and concealment by issuing the payments totaling approximately $1.8 million, even though it had already received some of the claims and reports from Canyon Club that it now declares to be fraudulent.

Canyon Club may be right that unreservedly disbursing benefits under an insurance contract waives any right to seek damages or reimbursement under a breach of contract theory. See *Pueblo Country Club v. AXA Corp. Solutions Ins. Co.*, No. 05-cv-01296, 2007 WL 951790 at *4 (D. Colo. Mar. 28, 2007). But American Insurance did not issue unreserved benefits. In the Statement of Additional Disputed Facts #18, American Insurance states that, contemporaneous with its issued payment, it "provided Plaintiff with the repair estimates used to determine costs. The estimates contained this required, bolded warning: 'It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include . . . denial of insurance and civil damages.'" Doc. 175 at 8. Canyon Club, however, clarified in its reply that these facts were *not* disputed. Doc. 187 at 3 ("Canyon Club agrees that the Disputed Facts set forth by American are disputed *with the exception* of . . . 12-25 . . ."). It is therefore undisputed that American Insurance issued payments subject to a reservation of rights.

Such a reservation preserves claims, rather than waiving them. *See Cribari v. Allstate Fire & Casualty Insurance Co.*, 861 F.App'x 693, 702 (10th Cir. 2021) ("Defendant made clear when it paid Plaintiff the policy limits that it reserved the right to claw back the payment. Cases Plaintiff cites that conclude the opposite lacked a reservation of rights

letter."). Canyon Club cannot show that, as a matter of law, American Insurance waived its claims.

### iii.   Estimate Opinions

Third, Canyon Club claims that the estimates for repairs it provided to American were just that—Estimates. And it further claims that it cannot be said to have misrepresented or fraudulently concealed facts when the Proof of Loss was labeled as "Initial, Estimated and Partial." Doc. 166 at 17. But the only authoritative cases that Canyon Club cites to support its position are not applicable. Most occur outside the context of insurance claims, and all focus on whether or not a prediction of future events can result in actionable fraud. See *Bell Press, Inc. v. Phillips*, 364 P.2d 938 at 400 (Colo. 1961) ("[M]ere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable."). An estimate of costs does not fit squarely within this description. While professional construction estimates are, in a sense, predictions of future events, they are also based on factual observations and existing conditions. They are not "in the nature of a prophecy." *Id.*

Perhaps more importantly, construction estimates are *meant* to be relied upon. In this case, the claim presentation and proof of loss which Canyon Club now claims are not actionable were provided to American Insurance in order to induce payment. Core allegation in Canyon Club's complaint are that American Insurance unjustly denied or delayed payments in response to these estimates. Doc. 86. Canyon Club cannot claim that these documents were both reliable for the purposes of making payments and unreliable for purposes of actionable fraud. Canyon Club has not shown that the third counterclaim fails as a matter of law on this ground or any other. Therefore, the motion is denied.

### B. Fourth Counterclaim Alleging Bad Faith

Canyon Club initially moved for judgment on American Insurance's fourth counterclaim for breach of the covenant of good faith and fair dealing on the ground that, in actuality, American was asserting a tort claim for "reverse" bad faith, not a breach of a contractual duty. Doc. 166 at 20. But it has apparently abandoned this argument after American Insurance made clear in its response that it was asserting a contractual claim, not a tort claim, and that under Colorado law every insurance contract contains an implied covenant of good faith and fair dealing that an insured owes its insurer. Doc. 187 at 10; *see also Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 565 (Colo. App. 2015) ("Thus, in the context of insurance contracts, an insurer has a duty to investigate and adjust claims in good faith, and an insured has a corresponding duty of good faith and fair dealing.") (citing *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 189 (Colo. 2004), and *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo. App. 1992)). *Soicher* recognizes that an insured owes its insurer an implied duty of fair dealing, so this is not a basis to dismiss the fourth counterclaim.

Canyon Club's remaining argument is that the fourth counterclaim is duplicative of the third counterclaim, which alleges breach of contract. The third counterclaim "already encompasses contract-based duties that may have been imposed on Canyon Club under the circumstances." Doc. 166 at 22. Canyon Club asserts that any implied duty of good faith is duplicative with the contractual language imposing obligations of honesty and cooperation on the parties. According to Canyon Club, an implied duty of good faith does not arise when the contract already imposes what is essential an express duty of good faith. But under Colorado law, these duties are distinguishable, and can arise simultaneously. *Soicher*, 351 P.3d at 565 ("[A]n insured's duty of good faith is broader than his or her duty to cooperate, and the consequences of breaching those respective duties are not necessarily the same.").

Because the duty of good faith is broader than the mere duty to cooperate, Canyon Club also had "discretion" in whether to act in good faith beyond the compulsions of the contract. See *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1364 (Colo. App. 1994) ("When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached."). Simply put, American Insurance may seek relief under a breach of contract theory for the alleged violation of the cooperation provision, while also seeking relief under an implied duty of good faith and fair dealing for the *manner* of the alleged violation. Canyon Club does not carry its burden to show that it is entitled to relief on this claim as a matter of law, and its motion is denied.

### C. Fifth Counterclaim for Recoupment

In its fifth counterclaim, American Insurance seeks to recoup the approximately $1.8 million it issued to Canyon Club prior to the instigation of this suit. American Insurance claims that the alleged breaching actions of Canyon Club allow a claw-back of any benefits issued under the insurance policy. Canyon Club seeks summary judgment on the basis that recoupment is merely a defensive remedy which may not be used offensively, and because the contract did not contain a provision voiding previously issued benefits in the event of a dispute or breach. Doc. 166 at 22–26.

It is true that recoupment allows a defendant to defensively reduce a judgment against it based on a related counterclaim. *U.S. v. 2,116 Boxes of Boned Beef, Weighing Approximately 154,121 Pounds*, 726 F.2d 1481, 1490 (10th Cir. 1984); *Reiter v. Cooper*, 507 U.S. 258, 264 (1993). But that is not the only application of recoupment. The Tenth Circuit has recognized in multiple contexts that an insurance provider may

issue benefits subject to claw-back conditions, which is what American Insurance claims here. *See Valley Forge Ins. v. Health Care Mgmt.*, 616 F.3d 1086 (10th Cir. 2010) (affirming the right of an insurance provider to recoup money spent in defending the insured); *Cribari v. Allstate Fire & Casualty Insurance Co.*, 861 F.App'x 693, 701–02 (10th Cir. 2021) ("Defendant had the right to pay Plaintiff subject to a reservation of rights and to claw back that payment should a court determine that Plaintiff had no entitlement to the payment."). Nor must this recoupment be based on explicit language within the insurance contract reserving a right of recoupment. *Id.*

As a result, American Insurance may assert a counterclaim for recoupment of its issued benefits, subject to proof that Canyon Club breached its contractual obligations. Because the facts that prove such a breach are disputed, this counterclaim is not appropriate for summary judgment, and Canyon Club's motion is denied.

### D. First and Second Counterclaims for Declaratory Relief

In the amended answer's first and second counterclaims, American Insurance asks for sweeping declaratory judgments. First, American Insurance asks for judgment that "Canyon Club has not complied with the terms of the Policy and that Canyon Club has misrepresented material facts, thereby barring Canyon Club from recovering in this action, compelling Canyon Club to return all amounts paid to it by American Family, and dismissing Canyon Club's claims." Doc. 87 at 72. Second, American Insurance alternatively seeks declaratory judgement finding that it is "not liable for all or portions of the amounts sought by Canyon Club." *Id.* at 73.

Canyon Club points out that the second counterclaim is duplicative with the second and third affirmative defenses in American Insurance's answer. *See L-3 Commun's Corp. v. Jaxon Eng'g & Maint., Inc.*, 69

F.Supp.3d 1136, 1145 (D. Colo. 2014) ("The Court is aware of no authority that allows parties to assert an affirmative counterclaim for declaratory relief . . . while simultaneously asserting an affirmative defense on precisely the same grounds."). American Insurance consents to the dismissal of this counterclaim, electing to pursue its second and third defenses, instead. Pursuant to this consent, the second counterclaim is dismissed without prejudice.

Canyon Club moves for summary judgment on the first counterclaim because there is no prospective controversy or claim to resolve via declaratory judgment. *See Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997). American Insurance, however, seeks a determination of the party's prospective obligations and relationship under the contract, including the very duty to provide a Proof of Loss statement that Canyon Club seeks to determine in its own claim for declaratory judgment. *See supra* section III. Resolution of these claims is not possible as a matter of law until a finder of fact resolves the underlying factual disputes regarding breach of contract and bad faith. *Id.* The motion for summary judgment of the first counterclaim is denied.

## CONCLUSION

It is **ORDERED** that Defendant American Insurance's Motions for Partial Summary Judgment, **Docs. 162, 163, and 165** are **DENIED**; Plaintiff Canyon Club's combined Motion for Partial Summary Judgment, **Doc. 166**, is **GRANTED IN PART** insofar as defendant's second counterclaim is **DISMISSED WITHOUT PREJUDICE** and otherwise **DENIED.**

DATED: September 29, 2023      BY THE COURT:

Daniel D. Domenico
United States District Judge