IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:18-cv-00683-DDD-SBP

CANYON CLUB CONDOMINIUM OWNERS
ASSOCIATION,

 Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSTURANCE
COMPANY,

 Defendant.

### ORDER ON DEFENDANT'S MOTIONS IN LIMINE

This case is set for trial on April 28, 2025. This order addresses the parties' outstanding disagreements over the admissibility of certain evidence.

### DISCUSSION

### I. Defendant's Motion in Limine #1 (Dkt. 260)

Defendant seeks to exclude evidence regarding Plaintiff's alleged replacement cost value damages for 40 of the 41 buildings (all except building #14) included in its insurance claim. Defendant cites to *Prairie Walk Condo. Ass'n v. The America Ins. Co.*, No. 22-cv-00870-DDD-KAS (D. Colo. Feb. 14, 2025) to support its argument that an insured that does not repair damaged property after receiving actual cash value damages from its insurer is not entitled to replacement cost value damages. Defendant states that because the insurance policy loss condition in this case is identical to the one in *Prairie Walk*, and because Plaintiff was paid over $1.8 million in actual cash value damages and only repaired 1

- 1 -

of its 41 damaged buildings, then it is barred from recovering replacement cost value damages and should not be allowed to present evidence regarding it. But genuine disputes of material fact preclude excluding evidence related to replacement cost value, as Plaintiff's Response details. Those facts include whether Defendant breached the insurance policy first by failing to adequately investigate damages, adjust the claim, and pay amounts due. Plaintiff claims Defendant's actual cash value payments were withheld and, when they were paid, wrongly excluded the cost of replacing ventilation in the roofing systems, which prevented it from making required repairs. Plaintiff also says its rights to replacement cost value on building 14 were ignored. These facts, among others, relate to replacement cost value evidence and must be determined by a jury. Accordingly, Defendant's first motion in limine is denied.

## II.  Defendant's Motion in Limine #2 (Dkt. 261)

Defendant's second motion in limine seeks to exclude evidence that Defendant's counterclaims support Plaintiff's bad faith claims. Specifically, Defendant wishes to preclude the statements Plaintiff made in its May 2019 Amended Complaint that Defendant's filing of counterclaims were additional acts of Defendant's bad faith. Plaintiff denies that Defendant's filing of counterclaims is evidence of bad faith, *see* Dkt. 295 at 3, and rather contends that evidence of the insurer's conduct—not its attorneys'—after litigation commenced should be permitted to support its bad faith and unreasonable delay/denial claims. *Id*. I agree. With the exception of the actual filing of legal claims or other litigation-specific activity, evidence of both parties' conduct after the suit began is potentially relevant to the claims and defenses at issue. This evidence is admissible and Defendant's second motion in limine is granted as to actual

- 2 -

filings made in the case, but denied regarding both parties' post-litigation conduct.

### III.   Defendant's Motion in Limine #3 (Dkt. 262)

Defendant's third motion in limine requests that the Court admit a December 28, 2021 email exchange between one of Plaintiff's lawyers, Ms. Chen-See, and Supreme Lending, a mortgage lending company. On that day, a representative of Supreme Lending sent a loan-underwriting inquiry to Ms. Chen-See requesting information related to this case. The request included "[a]ny/all engineering/expert reports commissioned by HOA/legal counsel—which should include (i.) Evidence of safety, structural soundness, habitability or functional use of the project." Dkt. 262 at 6. Ms. Chen-See responded the same day, saying in relevant part:

> We can confirm that based on our understanding of the damages caused by the hailstorm and the temporary repairs that have been performed, there are no structural, health or safety defects presently known to us as a result of the damages claimed in the lawsuit.

*Id.*

This is admissible under Rule 801(d)(2) as a party opponent's statement made by a person the party opponent authorized to make it and to impeach the testimony of Plaintiff's engineering expert, Ed Fronapfel, who opined in his report that Plaintiff's buildings have "structural, health, and life safety issues." *Id.* at 7. Plaintiff argues the email exchange is inadmissible because Ms. Chen-See's comments are not inconsistent with Mr. Fronapfel's opinions, they relate to different conditions in the buildings, and will likely confuse the jury. I disagree. Since the statements are relevant, are not privileged, and, by Plaintiff's own admission, not contradictory to its expert's statements, the parties can make arguments as to their value. Accordingly, they are relevant and admissible. Defendant's third motion in limine is granted.

## IV. Defendant's Motion in Limine #4 (Dkt. 264)

Defendant seeks to exclude evidence and argument that it should pay to fix cracked chimney flues, improperly constructed fire separation walls, and defective ventilation systems in Plaintiff's buildings. Plaintiff's reconstruction of building 14 revealed that these components were defective before the hail storm, which the parties do not dispute.[1] Under the policy, these damages fall squarely within exclusions listed in sections 1.B.2.l and 1.B.3.c. and are therefore not covered.[2] Because Plaintiff is not entitled to damages on these components, evidence about them is irrelevant to the parties' claims and defenses and is not admissible.

Plaintiff's appeal to the policy's ordinance or law clause is unavailing. *See* Dkt. 297 at 6–8. That clause states, in relevant part:

> The building sustains direct physical damage:
> 1. That is covered under this policy and such damage results in enforcement of the ordinance or law; or
> 2. That is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.
> 3. But if the damage is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage even if the building has also sustained covered direct physical damage.

Section IX.2.B; Dkt. 162-2 at 100.

---

[1] The internal flue pipe in the building's chimney was cracked, the fire separation walls were built too low, and the ventilation system did not adequately discharge warm water vapor. *See* Dkt. 264 at 8, 10.

[2] "Wear and tear; Settling, cracking, shrinking, or expansion; [T]he presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; Negligent work. Faulty, inadequate or defective repair, construction or . . . Maintenance." Dkt. 162-2 at 43–44.

Plaintiff argues subsection 2.B.(2) of the provision makes it so that direct physical damage not covered under the policy—the chimney flues, fire separation walls, ventilation system—is actually covered in the event the repairs to the covered items lead to the discovery of other necessary repairs to the building in its entirety. Plaintiff never explains how it is determined that a building "in its entirety" results in an enforcement of an ordinance or law (instead of component parts directly damaged by a covered loss), but proceeds to assert that's what happened here and, as a result, the policy requires Defendant to pay for those repairs.[3] *See* Dkt. 297 at 8. Plaintiff's interpretation of the clause misapprehends its purpose in the broader context of the policy.

The ordinance or law clause does not create coverage for Plaintiff, it only increases the benefits available to it where coverage already exists. And it is only triggered when a building code must be enforced regarding repairs to damage caused by a covered cause of loss. The cause of loss here was a hail storm. Neither party disputes that that storm did not cause the preexisting conditions that must be brought up to code as part of Plaintiff's reconstruction effort. It "was merely [the] precipitating event that led to the uncovering of the preexisting code violations." *Heffner v. Travelers Cas. Ins. Co. of Am.*, No. 22-cv-1123-WJM-MDB, 2024 WL 844470, at *11 (D. Colo. Feb. 28, 2024). Plaintiff must address these damaged components when it repairs its remaining buildings, but that requirement has nothing to do with losses resulting from the storm and covered by the policy. This is not, for example, a situation in which it is illegal to replace damaged wooden roof shingles with like material

---

[3] It appears this provision also undercuts Plaintiff's first argument that the building as a whole, not its discrete components, is covered under the policy, *see* Dkt. 297 at 4–7, since the provision apparently contemplates a scenario where certain parts of the building are damaged and covered, but others are not.

- 5 -

so more expensive tiles must be used—that is the sort of increased cost that this provision is meant to cover. As a result, Defendant is not required to pay for them, evidence about them in this case is irrelevant, and the motion in limine is granted.

## V. Defendant's Motion in Limine #5 (Dkt. 265)

Defendant seeks to exclude evidence regarding Plaintiff's total alleged damages based on its extrapolating the damages and repair costs from one of its buildings—building 14. This motion makes the same arguments Defendant made in its earlier motion to exclude the testimony of Plaintiff's expert, Mr. Fronapfel (Dkt. 223), including that his method of extrapolation is speculative and unreliable. In finding his testimony admissible and denying that motion, *see* Dkt. 231, I stated that the evidence is relevant and Defendant could attack the weight of his opinions through cross-examination. It still can. Evidence relating to Plaintiff's alleged damages calculated by extrapolating from the damages and repair costs to building 14 is relevant to the jury's factual determinations and may be challenged by the Defendant. Accordingly, Defendant's fifth motion in limine is denied.

## VI. Defendant's Motion in Limine #6 (Dkt. 266)

Defendant's sixth motion in limine seeks to exclude evidence relating to Judge Varholak's December 1, 2021 order, Dkt. 151, on the testing of shingles. In that order, Judge Varholak ruled that Defendant's non-testifying consulting expert, Mr. Koontz, who did not issue a report, was governed by Rule 26(b)(4)(D), which protects all of his work product from discovery. Plaintiff argues that Judge Varholak's ruling protects the actual results of Mr. Koontz's testing, but not the circumstances under which it happened, that it happened, or why it is significant to the causation experts involved in the case. Dkt. 303 at 2.

As was explained at the final pretrial hearing, Plaintiff may ask Defendant's expert, Mr. Logan, about the types of testing necessary to determine whether water could penetrate a shingle through a hail impact mark and whether he was able to perform the most useful sorts of testing. It may also question him, based on the information available to him, about his conclusions as to saturation. But Plaintiff is not permitted to ask Mr. Logan about Mr. Koontz's work or to try to introduce testimony or evidence about why he was not provided with that evidence or the materials he used. Those types of questions run afoul of Judge Varholak's order, which I adopt in full. Defendant's sixth motion in limine is therefore granted.

## VII.  Defendant's Motion in Limine #7 (Dkt. 267)

Defendant seeks to exclude evidence related to its reporting of Plaintiff for a fraudulent claim under Colorado's Fraudulent Claims and Arson Information Reporting Act, C.R.S. § 10-4-1001–1009. Under that Act, insurers are required to notify an appropriate agency when they have reason to believe a submitted claim may be fraudulent. *Id*. at 10-4-1003(1)(a). All such notifications "shall be confidential, shall not constitute a public record . . . and shall not be discoverable or admissible in any civil action." *Id*. at 10-4-1003(1)(b). By the Act's express language, Defendant's reporting is, without exception, inadmissible. Whether Defendant is immune from civil liability for its reporting based on its alleged bad faith conduct, as Plaintiff suggests, is a separate matter, and does not bear on the admissibility of Defendant's reporting. Defendant's seventh motion in limine is therefore granted.

## VIII.  Defendant's Motion in Limine #8 (Dkt. 268)

Defendant's eighth motion in limine seeks to preclude testimony or argument that would suggest the jury should award damages that are duplicative of the contract or statutory bad faith damages in connection

- 7 -

with Plaintiff's common law bad faith claim. Defendant also argues that Plaintiff should be required to elect between its common law and statutory bad faith claims to avoid confusing the jury. Defendant's first point is not in dispute, and the second is misguided.

Plaintiff has disclosed distinct damages on each of its three claims, distinguishing those recoverable under the Policy, those recoverable in tort under its claim for bad faith breach of contract, and those recoverable under the statutory remedy in C.R.S. §§ 10-3-1115 and 1116. *See* Dkt. 300 at 1. Plaintiff also admits that it cannot recover duplicative damages under separate theories of liability, and that if overlapping damages are awarded under different theories, only one recovery may be had. *Id.* But Plaintiff is also not required before trial to elect remedies. That may occur should the jury award the same damages under different causes of action, but an instruction to the jury can likely obviate that situation. Accordingly, Defendant's eighth motion in limine is denied.

### IX.   Defendant's Motion in Limine #9 (Dkt. 269)

Defendant seeks to exclude evidence relating to Defendant's handling of claims of other entities insured by it. It argues such evidence is prejudicial because it tempts a jury to hold an insurer liable for conduct unrelated to the claim at issue in the case. Plaintiff argues that the evidence it intends to introduce at trial is relevant to its defense of Defendant's third counterclaim for breach of contract by fraud or other means, as well as its bad faith and unreasonable delay/denial claims.

The specific evidence at issue involves three estimates in other cases where Defendant paid for items that it alleges in this case were fraudulently included in the Impact estimate. *See* Dkt. 301 at 2. I agree with Plaintiff that estimates that include items that Defendant appears to have approved in the past are relevant to Defendant's third

counterclaim and Plaintiff's defense. I don't think introducing this evidence will confuse the jury or prejudice Defendant, though I will closely monitor and exclude any evidence that appears cumulative on the point or is used to intimate things beyond the parties' claims or defenses. Defendant's ninth motion in limine is denied.

## X.    Defendant's Motion in Limine #10 (Dkt. 270)

Defendant's tenth motion in limine seeks to exclude evidence relating to Plaintiff's payment of premiums, the financial status and resources of Defendant, and the "Golden Rule" for plaintiff insureds in first-party insurance cases (which asks jurors to put themselves in the shoes of a plaintiff when deciding a case).

Regarding the payment of premiums, since the parties have stipulated that there was a binding policy in effect, *see* Dkt. 306 at 24, the payment of premiums is not relevant to either parties' claims or defenses, and evidence on this issue will be excluded.

Regarding the financial status and resources of Defendant, I am not convinced by Plaintiff's arguments that "the financial performance of the [Defendant] is material to its motivations and potential awareness that its conduct and positions taken during adjusting were unreasonable." Dkt. 302 at 3. Such evidence has little or no probative value and risks prejudicing the jury against the Defendant based on the financial disparity between it and Plaintiff. Accordingly, evidence on this issue is inadmissible.

Since Plaintiff has conceded Defendant's motion regarding the Golden Rule, all issues have been addressed and Defendant's tenth motion in limine is granted.

- 9 -

## XI. Defendant's Motion to Strike (Dkt. 277)

Defendant moves to strike Plaintiff's supplemental disclosure of damages pursuant to Rule 26(e) and Rule 37(c)(1). On March 4, 2025, Plaintiff served a supplemental disclosure of damages that increased the damages by over $6 million. On March 8, 2025, Plaintiff served Defendant 253 pages of documents in support of its new damages disclosure. Plaintiff has represented that its supplemental disclosure only updates the current pricing based on the exact same means and methods it used in earlier disclosures as necessary given the continuation of the trial date in this case. This disclosure is accepted and Defendant's motion to strike is denied.

## CONCLUSION

It is **ORDERED** that:

Defendant's Motion in Limine #1, #5, #8, #9, **Dkt. 260, 265, 268, 269**, are **DENIED**;

Defendant's Motion in Limine #3, #4, #6, #7, #10, **Dkt. 262, 264, 266, 267, 270**, are **GRANTED**;

Defendant's Motion in Limine #2, **Dkt. 261**, is **GRANTED IN PART and DENIED IN PART** as set forth above; and

Defendant's Motion to Strike, **Dkt. 277**, is **DENIED**.

DATED: April 11, 2025           BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge